Williams Law Firm, P.C.
Alexander T. Tsomaya
Peter B. Ivins
235 E. Pine, P.O. Box 9440
Missoula, Montana 59807-9440
(406) 721-4350
alex@wmslaw.com
peter@wmslaw.com
wlfmail@wmslaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, | CV_____ |
| Plaintiff, | |
| -vs- | |
| CONTROLLED KAOS PROMOTIONS LLC, RYAN PFLUG, PAULSON PALMER, individually, and JAMIE PALMER, individually and as parents and natural guardians of their minor children, | **COMPLAINT FOR DECLARATORY RELIEF** |
| Defendants. | |

For its Complaint for Declaratory Relief, Plaintiff United States Liability

Insurance Company (USLI) states and alleges as follows:

1.      This declaratory judgment action considers whether commercial

general liability coverage extends to Controlled Kaos Promotions LLC (Controlled

Kaos) with respect to a physical altercation incident involving the underlying plaintiffs, Paulson Palmer, Jamie Palmer, and their minor children. The Palmers allege the incident occurred during a boxing event that Controlled Kaos promoted when members of an outlaw biker gang began attacking Paulson and, shortly thereafter, the entire Palmer family. The underlying action is titled *Palmer et al. v. Pflug et al.*, DV-15-2024-229-NE (Mont. 11th Jud. Dist. Ct.).

2.      USLI is defending in the underlying action, subject to a full reservation of rights and pending this action. *See Horace Mann Ins. Co. v. Hanke*, 312 P.3d 429, 436 (Mont. 2013) (an insurer "acting in the normal course of business" may file a declaratory judgment while defending an insured under a reservation of rights).

3.      The Court should declare that USLI has no duty to defend or indemnify Controlled Kaos (or any of its employees or members) for the underlying action. First and foremost, the Assault or Battery Exclusion in USLI's policy unambiguously precludes coverage. Though not necessary to reach, a separate exclusion bars coverage for any actions by entities performing operations on an insured's behalf. Independently, coverage is precluded based on Controlled Kaos's late notice and non-cooperation. Other provisions identified below may also apply.

2

## I.    JURISDICTION AND VENUE

4.    The Court has jurisdiction under 28 U.S.C. § 1332(a). There is diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, venue is appropriate in this Division, and a real case or controversy presents itself to the Court.

### A.    There Is Complete Diversity

5.    Plaintiff United States Liability Insurance Company is a Nebraska corporation and has its principal place of business in Pennsylvania. It is a citizen of those states. *See* 28 U.S.C. § 1332(c); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

6.    Defendant Controlled Kaos Promotions LLC, upon information and belief, is a limited liability company that, through the citizenship of its membership, is a citizen of Montana. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

7.    Defendant Ryan Pflug is a citizen of Montana because he is domiciled in the state.

8.    Defendants Paulson and Jamie Palmer are citizens of Montana, and their minor children, are likewise citizens of Montana. The Palmers are named individually and on behalf of the minors.

**B.    The Amount In Controversy Exceeds $75,000**

9.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 347 (1977).

11.    The policy at issue contains limits above $75,000, which have been demanded by the underlying plaintiffs. This establishes the amount in controversy. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.2 (9th Cir. 2002).

12.    Additionally, when the duty to defend is at issue, the amount in controversy includes the cost of defending the underlying case. *See Okada v. MGIC Indem. Corp.*, 795 F.2d 1450, 1453 n. 1 (9th Cir. 1986). The cost of defense further shows the amount in controversy is fulfilled considering this expense to USLI.

**C.    Venue Is Appropriate In This Division**

13.    Venue is appropriate in the District of Montana because "a substantial part of the events or omissions giving rise to the claim occurred" in Flathead, Montana. 28 U.S.C. § 1391(b)(2).

14.    Divisional "venue is proper in any division of [this District] containing a county of proper venue under the laws of the State of Montana." L.R. 3.2(b). Venue is appropriate in Flathead County under state law because that is where the underlying case seeks a judgment. *See* Mont. Code Ann. § 25-2-121(2)(c) (providing several venue options in cases with "contracts of indemnity or insurance"). Flathead County is in the Missoula Division, so venue is proper in the Missoula Division of the District of Montana.

### D.    A Real Case Or Controversy Exists

15.    There is a real case or controversy.

16.    The Court has the authority to issue the requested declaratory judgment pursuant to 28 U.S.C. § 2201(a). *See also Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (observing there is a "case or controversy" for an insurer's "declaratory judgment action to establish whether it ha[s] a duty to defend and to indemnity"); *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Circ. 1992) (similar).

## II.    BACKGROUND

### A.    USLI's Policy Language

17.    Controlled Kaos obtained policy no. SE 1067035 from USLI. It has a three-day policy period, from February 10, 2023, to February 13, 2023. Controlled Kaos obtained the policy for a "Special Event." The Commercial General Liability

Coverage Form (CGL Form) within the policy explains under which scenarios liability coverage is extended. A number of endorsements also apply to the CGL Form and are reflected in the Extension of Declarations. A copy of the policy, with endorsements, is attached as **Exhibit 1**.

18.     The Commercial General Liability Coverage Part Declarations set forth the limits and the coverages that are available, subject to the pertinent policy terms, conditions, and exclusions.

19.     Controlled Kaos represented to USLI that Controlled Kaos was seeking coverage for a "Sporting Event / Tournament," to include "Boxing," and for which "500 Attendees" were expected. The policy has an "Each Occurrence Limit" of $1,000,000, with a "General Aggregate Limit" of $2,000,000. The CGL Form further explains how the limits of liability apply. *See* CGL Form, at 10–11 (Section III – Limits of Insurance).

20.     The CGL Form contains provisions regarding notice and cooperation, which are triggered upon an insured's notice of a loss or suit.

21.     Among addressing other provisions, Section IV mandates that an insured provides USLI notice within the following parameters while also cooperating with USLI through the claim or suit:

6

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*\*\*\*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
    **(1)** How, when and where the "occurrence" or offense took place;
    **(2)** The names and addresses of any injured persons and witnesses; and
    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
  **b.** If a claim is made or "suit" is brought against any insured, you must:
    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
    **(2)** Notify us as soon as practicable.
    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
  **c.** You and any other involved insured must:
    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
    **(2)** Authorize us to obtain records and other information;
    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

CGL Form, at 10–11.

22.     The CGL Form defines words in quotation marks. *See id.* at 12–16 (providing a complete list of definitions).

23.     The definitions include "suit," which "means a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." *Id.* at 15.

24.     Section I – Coverage A – Bodily Injury and Property Damage Liability coverage applies when there is "bodily injury" or "property damage" that is "caused by an 'occurrence.'" The "CGL Form defines "occurrence" to require an "accident." *See id.* at 14. Endorsement L 610 (11/04), meanwhile, supplies the definition of "bodily injury.

25.     Coverage B applies to "personal and advertising injury" coverage, which is a specifically identified type of offense.

26.     The terms in quotations in Coverages A and B are also defined in the policy.

27.     But any coverage under USLI's policy—that is, both Coverage A and Coverage B—is subject to Endorsement L 461 (12-11), which is the Assault or Battery Exclusion.

28.     The Assault or Battery Exclusion applies to the CGL Form and *any* liability coverage under the policy. It applies to both Coverage A and Coverage B and any "claim, demand or 'suit.'"

29.     The Assault or Battery Exclusion's substantive provisions state:

## ASSAULT or BATTERY EXCLUSION

This insurance does not apply to:

Any claim, demand or "suit" based upon any actual or alleged "assault" or "battery", or out of any act or omission in connection with the prevention or suppression of any "assault" or "battery", including the use of reasonable force to protect persons or property, whether caused by or at the instigation or direction of an insured, its "employees", agents, officers or directors, patrons or any other person.

Further, no coverage is provided for any claim, demand or "suit" in which the underlying operative facts constitute "assault" or "battery".

This exclusion applies to all "bodily injury", "property damage" or "personal and advertising injury" sustained by any person, including emotional distress and mental anguish, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving "assault" or "battery" whether alleged, threatened or actual including but not limited to "assault" or "battery" arising out of or caused in whole or in part by negligence or other wrongdoing with respect to:

a. hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible; or

b. investigation or reporting any "assault" or "battery" to the proper authorities; or

c. the failure to so report or the failure to protect any person while that person was in the care, custody or control of the insured, its "employees", agents, officers or directors; or

d. any acts or omissions of any insured, its "employees", agents, officers, directors, patrons or other persons resulting from any "assault" or battery" and occurring subsequent in time thereto which caused or are alleged to have caused, directly or indirectly, any

"bodily injury", "property damage", or "personal and advertising injury" to any person.

This exclusion supersedes any provision in the attached policy that provides coverage for "bodily injury" arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the use of reasonable force to protect person(s) or property.

"Assault" means the threat of, or use of force on another that causes that person to have apprehension of imminent harmful or offensive conduct, whether or not the threat or use of force is alleged to be negligent, intentional or criminal in nature.

"Battery" means negligent or intentional physical contact with another without consent that results in physical or emotional injury.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Endorsement L 461 (12-11).

30.    The policy also contains an endorsement setting forth an exclusion for

events hosted by insureds stating, in pertinent part:

**Event Vendor, Exhibitor And Contractor Exclusion**

**I.** This policy does not insure against loss or expense, including but not limited to the cost of defense arising from or resulting directly or indirectly, from "bodily injury", "property damage", or "personal or advertising injury" arising out of operations performed for any insured or other party:
**A.**    By a vendor, exhibitor, or performer participating in an event hosted, sponsored or coordinated by any insured; or
**B.**    Any contractor(s) or sub-contractor(s) doing work at or for any event hosted sponsored or coordinated by any insured

10

This includes any acts or omissions of any insured in the hiring, employment, training, selection, retention, or monitoring of any person or entity described in paragraph **A.** or **B.** above.

Endorsement LLQ 102 F (04-15).

31.     The policy also does not provide coverage for punitive or exemplary damages, consistent with Montana Code Annotated § 33-15-317. Exclusion L-224 (10-10) precludes coverage for punitive damages and is titled the Punitive or Exemplary Damages Exclusion.

### B.     The Underlying Action's Allegations

32.     The operative pleading in the underlying action is the First Amended Complaint and Demand for Jury Trial (FAC). A copy is attached as **Exhibit 2**.

33.     Paulson and Jamie Palmer (individually and on behalf of their children) initiated the underlying action against numerous defendants. *See* FAC, ¶ 1.  Though a number of the allegations may be disputed by the defendants in the underlying action, the following summarizes the Palmers' allegations in the underlying action.

34.     In a nutshell, the Palmers allege that they attended a boxing event held at the Majestic Valley Arena in Kalispell on February 10, 2023. FAC, ¶¶ 8–13. It was during that event that they allege that outlaw motorcycle gang members physically and verbally attacked the Palmers. *See generally id.*

35.     The Palmers allege that Controlled Kaos and the other named defendants agreed "to plan, promote, set-up, prepare for, host, supervise, conduct, control, and sell tickets for the Flathead Valley Fight Night, which was a boxing match that was held at the Arena[.]" *Id.* ¶ 11.

36.     The Palmers allege that the defendants "hosted prior events that have turned violent and become unsafe for patrons, spectators, and/or the community." *Id.* ¶ 12.

37.     With respect to the night in question, the Palmers allege the defendants set up the event with "insufficient security and prepar[ed] the [e]vent set-up in such a manner so as to force patrons to walk through and around a known, violent biker gang and their bikes to access bathrooms, drink locations, and other [e]vent attractions." *Id.* ¶ 13.

38.     The Palmers assert that some of the defendants "allow[ed] a known, violent, biker gang(s) special attendance during the event, to allow the known, violent biker gang(s) to have a special access/exit where they avoided security and normal checkpoint areas where they could be observed, screened, or cleared to assure they did not enter the [e]vent with contraband or prohibited items such as weapons or outside alcohol." *Id.* ¶ 13.

39.     The Palmers allege the defendants did not prepare any "entry checkpoints, monitoring procedures," or other "reasonable steps" to ensure security in light of the motorcycle gangs. *Id.*

40.     The underlying action further advocates that Controlled "Kaos and/or its agents/employees were negligent in providing a security set-up for an event they knew or should have known they did not have an adequate or reasonable security plan or personnel to operate correctly or safely." *Id.* ¶ 15. This "negligent set-up" is what would ultimately cause the Palmers' injuries. *Id.*; *see also id.* ¶ 19 (alleging a negligent "set-up, preparation, and planning").

41.     Relatedly, Controlled Kaos and its agents were allegedly "negligent in their response" to the ultimate altercation, and "negligent by failing to intervene" once the attack commenced. *Id.* ¶¶ 16–17.

42.     The Palmers allege that motorcycle gangs such as the "Pagan's Biker Gang" and/or the "Warlord's Biker Gang" attended the boxing match. *Id.* ¶ 20. These gangs attended, the Palmers allege, at Controlled Kaos' and others' request. *Id.* ¶ 21. Inviting these violent groups, the Palmers assert, "was negligent." *Id.*

43.     The motorcycle gangs displayed their "gang propaganda," and the defendants allegedly gave the gangs an "exclusive right" to display their motorcycles within the Arena. *Id.* ¶¶ 22–23.

44.    The gangs were allegedly placed "directly in the paths likely to be taken by normal patrons" to use the facilities, such as "bathrooms" and "concessions." *Id.* ¶ 23.

45.    Despite them "being known as violent biker gangs," the defendants allegedly did not make any effort to "remove or segregate" the gangs." *Id.* ¶ 24. The Palmers allege the gangs brought weapons into the event, such as a baseball bat and knives. *Id.*

46.    At some point during the boxing event, Paulson Palmer made his way to the restroom. *Id.* ¶ 25.

47.    Mr. Palmer had to walk through the lineup of motorcycles. *Id.* ¶¶ 25–26. Members of the motorcycle gangs were guarding those motorcycles. *Id.*

48.    As Mr. Palmer was returning from the restrooms to his seat, he alleges that he was "immediately and aggressively confronted by the" motorcycle gang(s). *Id.* ¶ 27. Multiple members of the motorcycle gang(s) "proceeded to physically attack, restrain, detain, falsely imprison/detain, and assault/batter Paulson [Palmer] as a group." *Id.*

49.    According to the FAC, Mr. Palmer unsuccessfully attempted to "defend himself" and was outnumbered. *Id.* ¶ 28. Due to the "actions and threats" of the motorcycle gang(s), Mr. Palmer alleges he was "wrongfully confined and detained during and after this attack." *Id.* ¶ 29.

14

50.     The FAC alleges that other members of the Palmer family saw Mr. Palmer being attacked and "beaten." *Id.* ¶ 30. The other members of the family—Jamie, Dylan, and Kaden—"ran to attempt to aid Paulson [Palmer] and protect him." *Id.*

51.     But as they "attempted to help Paulson [Palmer], and drag him from the attack, they were verbally and physically assaulted." *Id.* ¶ 31. Dylan Palmer, for instance, was beaten "with a wooden baseball bat" that one gang member had brought. *Id.*

52.     Then, after the attack, the Palmers allege the motorcycle gang(s) "continued to harass and threaten, with no proper intervention" from the underlying defendants hosting and/or sponsoring the event. *Id.* ¶ 32.

53.     The Palmers allege that the underlying defendants "set-up this event in an unreasonable manner and chose not to police, control, remove, separate, or disarm the [g]ang members." *Id.* ¶ 33.

54.     This caused the Palmers physical and emotional injuries, such as being "verbally or physically and wrongfully detained, imprisoned, threatened, assaulted, and battered and were in fear for their safety and Paulson's safety." *Id.*

55.     The Palmers allege suffering "physical, mental, and emotional injuries" from the attack. *Id.* ¶¶ 33–35. This includes the following:

These physical, mental, and emotional injuries include trauma to Paulson's face, head and body, bleeding, concussion, broken bones, memory and processing loss, speech difficulty, PTSD, and a traumatic brain injury. They also include immediate and ongoing fear, anxiety, PTSD, emotional distress, worry for their safety and the safety of their family, and other harms to all Plaintiffs.

*Id.* ¶ 36.

56.    The Palmers sue under five separate "counts," which constitute their legal theories.

57.    First, they bring a claim for negligence. *See id.* ¶¶ 37–55. The Palmers allege the defendants had duties to provide security and safeguards, while also supplying reasonable and appropriate care in the hosting, promoting, supervising, and conducting this Event. *See id.* They also allege that the physical attack constituted "wrongful false imprisonment and detention." *Id.* ¶ 48.

58.    The remaining theories are based on related allegations.

59.    Second, the Palmers argue they are entitled to recover under a negligent infliction of emotional distress theory. *See id.* ¶¶ 56–60. Palmer's family assert that they had to watch Palmer be injured and were then themselves "detained, threatened, battered, and assaulted." *Id.* ¶ 60.

60.    Third is Dylan's and Kaden's (the children of Paulson and Jamie) loss of consortium theory. *See id.* ¶¶ 61–64.

61.    Fourth is Jamie's loss of consortium claim, as the spouse of Palmer. *See id.* ¶¶ 63–68.

62.    Fifth, the Palmers assert a claim for "false/wrongful detention and/or imprisonment." *See id.* ¶¶ 69–72.

63.    Sixth, the Palmers seek punitive damages. *See id.* ¶¶ 73–77.

64.    For their claims, the Palmers seek remedies encompassing past and future economic damages, non-economic damages, costs, attorney fees, and punitive damages. *See id.* pp. 13–14.

### C.    Tender and Notice

65.    Upon service of the underlying action, Controlled Kaos did not tender the underlying action to USLI.

66.    The Palmers' attorney sent USLI a notice of representation letter on January 30, 2025.

67.    Shortly thereafter, USLI attempted to contact Controlled Kaos through the information that was provided when the subject policy was obtained. But Controlled Kaos did not respond or otherwise tender the action.

68.    No communications from Controlled Kaos came in following months.

69.    Nevertheless, via letter dated August 4, 2025, USLI wrote to Controlled Kaos to ask if Controlled Kaos was tendering the action and if it would like a defense, subject to a reservation of rights.

70.    Controlled Kaos initially refused to accept the correspondence through the United States Postal Service.

71.    USLI, through counsel, again sent the correspondence. This time via FedEx, which was delivered.

72.    Controlled Kaos did not respond for over four months.

73.    It was not until December 16, 2025, that Controlled Kaos first responded and stated it would like to tender the underlying action and seek a defense under USLI's reservation of rights. Controlled Kaos then forwarded the FAC, which was USLI's first notice from Controlled Kaos.

74.    USLI then hired defense counsel and is providing a defense, subject to a reservation of rights, and then including Controlled Kaos's member, Pflug.

75.    The underlying case had been pending for some time at that point. More specifically, Controlled Kaos and Pflug had been served in February 2024.

## III.   DECLARATORY JUDGMENT

76.    USLI's policy does not provide liability coverage for the underlying action. The CGL Form and applicable endorsements do not provide coverage. The Court should declare that Controlled Kaos and Pflug, in his role for Controlled Kaos, are not entitled to coverage.

77.    The Assault or Battery Exclusion preclude all coverage for the underlying action.

78.    The Assault or Battery Exclusion precludes coverage for the entire underlying action, which is a "suit." This is because the underlying action based upon "assault" and "battery" as exclusion defines those terms.

79.    In other words, the Palmers' lawsuit is based on "assault" and "battery."

80.    The exclusion applies to any "assault" or "battery," "whether caused by or at the instigation or direction of an insured, its 'employees', agents, officers or directors, patrons or any other person." As this language expressly states, the Assault or Battery Exclusion applies to "assault" or "battery" caused by "*any* person."

81.    That the underlying action is based on alleged operative facts that qualify as "battery" and/or "assault" establishes this point further. There is "no coverage provided for any claim, demand or 'suit' in which the underlying operative facts constitute 'assault' or 'battery.'"

82.    Furthermore, the "exclusion applies to all 'bodily injury' . . . sustained by any person, including emotional distress and mental anguish, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving 'assault' or 'battery' whether alleged, threatened or actually including but not limited to 'assault' or 'battery' arising out of or caused in whole or in part by

negligence or other wrongdoing with respect to" those areas delineated in subsections a. through d. This continues to cover the Palmers' lawsuit.

83.    Reading the Assault or Battery Exclusion as a whole, it precludes coverage for the conduct alleged in the underlying action.

84.    Because the Assault or Battery Exclusion applies, USLI has no duty to defend or indemnify the underlying action.

85.    To the extent the underlying action is based on individuals or entities performing operations for Controlled Kaos, the Event Vendor, Exhibitor And Contractor Exclusion applies. It, too, precludes coverage.

86.    There is no duty to defend when comparing the underlying allegations to the policy provisions.

87.    A conclusion that there is no duty to defend compels a conclusion that there is no duty to indemnify.

88.    Nor is there a duty to indemnify for the damages sought.

89.    Alternatively, Controlled Kaos (and any individual within the organization, including Pflug) materially breached the conditions set forth above in Section IV of the CGL Form.

90.    This breach prejudiced USLI.

91.    Furthermore, there is no coverage based upon breaches of duties to cooperate set forth in Montana Code Annotated § 33-18-243.

92.     Accordingly, in addition to the policy language not providing coverage, coverage may also be precluded for breaches of Section IV of the CGL Form and/or Montana Code Annotated § 33-18-243.

93.     There is no coverage for punitive damages.

## REQUEST FOR RELIEF

USLI requests the following relief:

1.      The Court declares there is no coverage under USLI's policy for any and all claims in the underlying case and, therefore, USLI owes no duty to defend or indemnify for the underlying case.

2.      USLI should be awarded its costs.

3.      The Court grant any additional or supplemental relief which it deems necessary.

DATED this 5th day of February, 2026.

/s/ Alexander T. Tsomaya
Alexander T. Tsomaya
Peter B. Ivins
*Attorneys for Plaintiff*